# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Case No. 24-10231-CLH |
| | Chapter 7 |
| SETH MARTIN FRANKLIN | |
| Debtor. | |
| | |
| COSMOGRAPHIC SOFTWARE, LLC, | Adv. Pro. No. 24-01018-CLH |
| Plaintiff, | |
| v. | |
| SETH MARTIN FRANKLIN, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION FOR SUMMARY JUDGMENT

On December 12, 2024, this matter came before the Court for a status hearing on the Motion for Summary Judgment (the "Motion") [Adv. Pro. Doc. No. 13][1] filed by Cosmographic Software, LLC ("Cosmographic") and the Response and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (the "Response") [Adv. Pro. Doc. No. 28] filed by Seth Martin Franklin ("Franklin"). At the hearing, the parties waived oral arguments, and the Court took the Motion under submission. For the reasons below, the Motion is GRANTED.

## JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of

---

[1] "Adv. Pro. Doc. No." refers to the docket number for a filing in the instant adversary proceeding, Adversary Proceeding Number 24-01018.

Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND AND PROCEDURAL HISTORY

**A. Procedural History and Facts from the Michigan Court Lawsuit**

On December 1, 2023, Cosmographic commenced a lawsuit (the "Michigan Lawsuit") in the United States District Court for the Eastern District of Michigan (the "Michigan Court") by filing a complaint against Franklin (the "Michigan Complaint"). [Adv. Pro. Doc. No. 13, Exhibit No. 24]. In the Michigan Complaint, Cosmographic asserted the following causes of action: (1) theft and misappropriation of trade secrets pursuant to the Defend Trade Secrets Act; (2) misappropriation of trade secrets; (3) breach of contract; (4) business defamation; (5) conversion; (6) unjust enrichment; (7) tortious interference with a business expectancy; (8) breach of fiduciary duties; and (9) preliminary and permanent injunctive relief. [Adv. Pro. Doc. No. 13, Exhibit No. 24]. As to Count 5, Cosmographic alleged that Franklin wrongfully took possession of its confidential information and trade secrets and used them for his own benefit, to the detriment of Cosmographic. [Adv. Pro. Doc. No. 13, Exhibit No. 24].

Concurrently with filing the Michigan Complaint, Cosmographic sought an ex parte temporary restraining order ("TRO") and applied for a preliminary injunction. [Adv. Pro. Doc. No. 13, Exhibit No. 25]. On December 5, 2023, the Michigan Court issued the TRO and an order to show cause as to why the preliminary injunction should not be entered against Franklin. [Adv. Pro. Doc. No. 13, Exhibit No. 26]. The TRO prohibited Franklin from 1) utilizing, copying, distributing, loaning, or transmitting Cosmographic's confidential information, or 2) deleting, destroying, or altering any of Cosmographic's confidential information already in Franklin's possession. [Adv. Pro. Doc. No. 13, Exhibit No. 26]. It also required that Franklin cease and

desist from any further access, publication, or dissemination of Cosmographic's confidential information and that he restore exclusive access to Cosmographic's servers and media platforms to Cosmographic. [Adv. Pro. Doc. No. 13, Exhibit No. 26].

At the show-cause hearing on December 11, 2023, Franklin failed to appear, despite being personally served three days prior, and the Michigan Court entered a preliminary injunction on December 18, 2023. [Adv. Pro. Doc. No. 13, Exhibit No. 28 & 30]. In the preliminary injunction, the Michigan Court noted that "Cosmographic is the rightful owner and entitled to exclusive control over its data servers, platforms, and profiles, including but not limited to any such profiles on or related to Discord, Reddit, specifically the "r/spaceengine" subreddit, and Steam." [Adv. Pro. Doc. No. 13, Exhibit No. 30].

On December 21, 2023, Cosmographic moved to hold Franklin in contempt of court for failing to comply with provisions of the TRO and preliminary injunction. [Adv. Pro. Doc. No. 13, Exhibit No. 31]. On December 27, 2023, the Michigan Court ordered Franklin to show cause as to why he should not be held in contempt of court and scheduled a hearing for January 4, 2024. [Adv. Pro. Doc. No. 13, Exhibit No. 34]. Franklin did not appear at the hearing despite having knowledge of the hearing and being ordered to appear. [Adv. Pro. Doc. No. 13, Exhibit No. 36]. At the outset of the hearing, the Michigan Court noted, ". . . I don't know that I need more evidence in the record than there is. . . ." [Adv. Pro. Doc. No. 13, Exhibit No. 36]. Through the testimony of Cosmographic's CEO, the evidence at the hearing established that Franklin violated the TRO and preliminary injunction. [Adv. Pro. Doc. No. 13, Exhibit No. 38]. Franklin not only failed to comply with the requirement to preserve information and restore access to Cosmographic, but also took affirmative actions to transfer ownership of the sub-Reddit to a third-party and directed them to remove access to anyone associated with Cosmographic. [Adv.

Pro. Doc. No. 13, Exhibit No. 36]. Franklin similarly failed to return Steam ownership to Cosmographic, and Cosmographic instead had to request ownership directly from Steam. [Adv. Pro. Doc. No. 13, Exhibit No. 36]. Cosmographic also introduced evidence that Franklin, under his pseudonym "Fox Mulder," sent Discord messages stating that he would "destroy Cosmographic." [Adv. Pro. Doc. No. 13, Exhibit No. 38]. On January 9, 2024, the Michigan Court held Franklin in contempt of court for violating "each of the provisions of the Temporary Restraining Order, the Preliminary Injunction and the Order to Appear for the January 4, 2024 hearing." [Adv. Pro. Doc. No. 13, Exhibit No. 38].

On January 9, 2024, Franklin hired legal counsel and on January 10, 2024, Franklin's counsel filed a Notice of Appearance. [Adv. Pro. Doc. No. 13, Exhibit No. 39]. On February 8, 2024, the Michigan Court entered a Consent Judgment: awarding Cosmographic $350,000.00 in compensatory damages and $75,000.00 in attorney fees and costs; rendering the provisions of the preliminary injunction permanent; and finding in favor of Cosmographic on all claims asserted in the Michigan Complaint. [Adv. Pro. Doc. No. 13, Exhibit No. 44]. On February 29, 2024, Cosmographic moved to hold Franklin in contempt for violating the permanent injunction, but the motion was stayed by Franklin's bankruptcy case.

### B. The Instant Bankruptcy Case and Adversary Proceeding

On February 28, 2024, Franklin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[2] [Doc. No. 1].[3] In the schedules filed with the petition, Franklin listed Cosmographic as a creditor holding an unsecured claim totaling $425,000.00. [Doc. No. 1]. On June 12, 2024, Cosmographic initiated this adversary proceeding by filing the Complaint. [Adv. Pro. Doc. No. 1]. Cosmographic asks the Court to find that the debt owed by Franklin, plus

---

[2] All references to the "Code" or the "Bankruptcy Code" are to 11 U.S.C. §§ 101-1532.
[3] "Doc. No." refers to the docket number for a filing in Case No. 24-10231, the bankruptcy case underlying the instant adversary proceeding.

attorney fees and costs, is nondischargeable under sections 523(a)(4) and (a)(6) of the Bankruptcy Code. Franklin, without assistance of legal counsel, filed his Answer to the Complaint on July 15, 2024, generally denying or asserting a lack of knowledge as to all allegations in the Complaint. [Adv. Pro. Doc. No. 9].

On August 9, 2024, Cosmographic filed the Motion, arguing that under the doctrine of issue preclusion, the compensatory damages awarded in the Consent Judgment obtained in the Michigan Lawsuit are non-dischargeable. On October 30, 2024, Franklin filed the Response, arguing that issue preclusion does not apply and issues of material fact exist which preclude summary judgment. On November 29, 2024, Cosmographic supplemented the Motion with its Reply Brief in Support of Summary Judgment. [Adv. Pro. Doc. No. 33]. At a status conference held on December 12, 2024, the parties agreed to the Court's ruling on the briefs without oral argument.

## LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### A. Summary Judgment Standard

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), as made applicable to this adversary proceeding by Fed. R. BANKR. P. 7056. At the summary judgment stage, the court does not weigh the evidence and determine the truth, but instead determines only whether there is a genuine issue of material fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute of fact is "genuine" if "the evidence is such that a

5

Case 24-01018    Doc 39    Filed 02/24/25    Entered 02/24/25 15:07:01    Desc Main
Document      Page 5 of 13

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court must "resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party." *Marshall v. Fair Lanes Maryland Bowling, Inc.*, 118 F.3d 1487, 1488 (11th Cir. 1997).

As the movant, Cosmographic must establish the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Cosmographic asserts that, based on the doctrine of issue preclusion, or collateral estoppel, no genuine issues of material fact exist because the facts supporting its claims have already been established in the Michigan Lawsuit. Franklin argues that because the issues presented in this Court are not identical to those in the Michigan Lawsuit, issue preclusion does not apply, and, as a result, issues of material fact exist which require a trial.

**B. Issue Preclusion**

Issue preclusion, or collateral estoppel, prevents relitigation of factual or legal issues previously litigated and determined in a prior suit. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003). The United States Supreme Court specifically contemplated, and approved of, the use of issue preclusion to bar relitigation of facts and legal issues in dischargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 291 (1991). Because the judgment entered in the Michigan Lawsuit was rendered by a federal court hearing the case under federal question jurisdiction, the Court applies federal issue preclusion law.

Under federal issue preclusion law, four elements must be satisfied: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated; (3) its determination must have been a critical and necessary part of the judgment; and (4) the party against whom issue preclusion is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *CSX Transp., Inc.*, 327 F.3d at 1317. Although

6

Franklin has contested only the "identical issue" prong for each of the non-dischargeability bases alleged here, the Court will briefly address the other prongs before turning to a full discussion of the "identical issues" element.

### i. The Issues Were Actually Litigated.

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)). Unlike claim preclusion, which applies only when a final judgment is entered, issue preclusion may apply when "the adjudication of an issue [is] sufficiently firm." *Powrzanas v. Jones Util. & Contr. Co.*, 822 Fed. Appx. 926, 929 (11th Cir. 2020). In interpreting this prong, the Bankruptcy Court for the Southern District of Georgia stated that "the 'actual litigation' requirement may be satisfied by showing substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 504 (Bankr. S.D. Ga. 2009) (quoting *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995). That court noted that the debtor did not give up at the outset, participated in the adversary process for years, hired counsel, and answered the complaint. *Id.* Based on these facts, the court determined that the issue was "actually litigated." *Id.* at 1324-25.

Here, the Court finds that the issues were "actually litigated" in the Michigan Lawsuit. Franklin had numerous opportunities to defend himself but chose not to answer the Michigan Complaint. He chose not to respond to the order to show cause and not to respond to the motion for contempt. With respect to more than one hearing, Franklin communicated to the Michigan Court that he was aware of, but would not be attending, such hearings. Franklin hired counsel to

7

Case 24-01018    Doc 39    Filed 02/24/25    Entered 02/24/25 15:07:01    Desc Main
Document    Page 7 of 13

represent him in the Michigan Lawsuit, and, shortly thereafter, the parties agreed to the Consent Judgment. Although the judgment was reached by consent, the Court cannot ignore the "actual litigation" that occurred up until that point.

### ii. Determination of the Issue Was Critical and Necessary to the Resolution.

An issue is critical and necessary to a judgment when the judgment's disposition relies on the issue's resolution. *Yazdchi v. Wells Fargo Bank, N.A*., 2018 U.S. Dist. LEXIS 234008, *8 (S.D. Tex. Oct. 23, 2018). Courts in this circuit have held that when judgment is entered on a multi-count complaint, each cause of action can be considered critical and necessary if the judgment makes clear the causes of action on which that the judgment has been entered. *See Gutierrez v. Pena (In re Pena)*, 619 B.R. 779, 782-84 (Bankr. S.D. Fla. 2020) (discussing the approaches used by bankruptcy judges in the Southern District of Florida to determine whether issues were critical and necessary to default judgments).

Here, the Consent Judgment specifically states that judgment was entered on all causes of action asserted in the Michigan Complaint. [Adv. Pro. Doc. No. 13, Exhibit No. 44]. Accordingly, all nine causes of action were critical and necessary to the Consent Judgment rendered in the Michigan Lawsuit.

### iii. The Defendant had a Full and Fair Opportunity to Litigate in the Michigan Lawsuit.

This prong requires that the party against whom issue preclusion is being asserted had a full and fair opportunity to litigate the issues in the prior litigation. Franklin was a party to the Michigan Lawsuit and, although he failed to appear on multiple occasions, he stated he was aware of the ongoing litigation and he eventually hired counsel to represent him, resulting in the Consent Judgment. *See* [Adv. Pro. Doc. No. 13, Exhibit No. 30; Adv. Pro. Doc. No. 13, Exhibit

No. 36; Adv. Pro. Doc. No. 13, Exhibit No. 39]. Based on these facts, the Court finds that Franklin had a full and fair opportunity to litigate in the Michigan Lawsuit.

    iv.    **The facts necessary to reach the Consent Judgment in the Michigan Lawsuit are identical to those necessary for establishing nondischargeability.**

Under this prong, courts may look to determine whether certain facts or legal issues from the prior litigation are identical to those in the present litigation. It is a well-established principle that issue preclusion can be used to either foreclose relitigation of common facts or ultimate legal issues. *See Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547, 548 (11th Cir. 2008). When using preclusion as to common facts, elements of the claims from the prior litigation need not be identical to those in the present litigation. Instead, it is the relevant facts which must be identical across the proceedings. *See Newcom v. United States CFTC (In re Newcom)*, 619 B.R. 758, 765 (Bankr. M.D. Fla. 2020) (citing *In re Halpern*, 810 F.2d 1061, 1063-64 (11th Cir. 1987). Dischargeability issues do not arise in non-bankruptcy proceedings, so bankruptcy courts look to the foundation of the prior judgment to determine whether there are commonalities with the dischargeability exception in question. *In re Jones*, 611 B.R. 685, 696 (Bankr. M.D. Ala. 2020).

Several courts have concluded that facts supporting a judgment based on conversion in the initial litigation will be entitled to preclusive effect in a nondischargeability action under section 523(a)(6). *See, e.g.*, *Trost v. Trost (In re Trost)*, 2017 Bankr. LEXIS 1807, *13-14 (B.A.P. 6th Cir. June 28, 2017); *Kasishke v. Frank (In re Frank)*, 425 B.R. 435, 443 (Bankr. W.D. Mich. 2010) ("Conversion of property clearly falls within the misdeeds contemplated in 11 U.S.C. § 523(a)(6) – willful and malicious injury to persons or property."); *Richardson v. Richardson (In re Richardson)*, 2020 WL 6937743, 2020 Bankr. LEXIS 2778, *5 (Bankr. W.D. Ky. Oct. 6, 2020).

Because judgment was entered on each cause of action – including conversion – in the Michigan Lawsuit, that Michigan Court necessarily concluded that Franklin converted property. Although the Michigan Lawsuit ultimately resulted in the Consent Judgment, the facts revealed throughout the TRO hearing, preliminary injunction hearing, and contempt hearings are the same facts relevant to the non-dischargeability action before this Court. This includes facts establishing Franklin's unlawful seizure, retention, and eventual destruction of confidential information. [Adv. Pro. Doc. No. 13, Exhibit No. 24]. It also includes statements made by Franklin indicating that he intended to destroy Cosmographic. [Adv. Pro. Doc. No. 13, Exhibit No. 38]. Because the facts revealed in the Michigan Lawsuit are identical to the facts relevant to dischargeability, and all other elements of issue preclusion are satisfied, these facts are deemed established and the parties are precluded from relitigating those factual issues.

### C. Nondischargeability Under Section 523(a)

In general, the Bankruptcy Code allows debtors to discharge all prebankruptcy liabilities. *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023). However, Congress excepted from discharge certain debts for which it deemed that the creditor's interest in recovery outweighs the debtor's interest in a fresh start. *Id*. Because these are exceptions rather than the rule, they "must be strictly construed against a creditor and liberally construed in favor of a debtor." *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021). Creditors must prove the requirements for non-dischargeability by a preponderance of the evidence. *Grogan*, 498 U.S. at 291.

In the present case, Cosmographic alleges three bases under which it believes the debt should be found non-dischargeable: 1) "fraud or defalcation while acting in a fiduciary capacity," 2) "willful and malicious injury," and 3) felonious taking of property. 11 U.S.C. §§ 523(a)(4) &

(6); [Adv. Pro. Doc. No. 1]. Because the Court finds that the debt is nondischargeable under section 523(a)(6), it declines to address Cosmographic's additional contentions.

    i.    **Section 523(a)(6)**

To prevail on a claim under section 523(a)(6), a plaintiff must prove that an individual's debt arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Applicable Eleventh Circuit case law is clear: to satisfy section 523(a)(6) the injury caused by a debtor's actions must be both willful *and* malicious. *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012). "A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Loucks v. Smith (In re Smith)*, 537 B.R. 1, 14 (Bankr. M.D. Ala. 2015) (quoting *In re Jennings*, 670 F.3d at 1334). Therefore, recklessly or negligently caused injuries do not meet the requirements for nondischargeability. Section 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998) (emphasis in original).

Section 523(a)(6) also requires that a debtor's conduct be "malicious." In this context, "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *In re Walker*, 48 F.3d 1161, 1164 (11th Cir. 1995). A finding of specific intent to harm is not required; malice can be implied based on the nature of the act itself. *See Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989).

As previously noted, conversion of property is conduct that meets the definition for willful and malicious injury for purposes of nondischargeability. *See Steier v. Best (In re Best)*, 109 F. App'x 1, 4 (6th Cir. 2004) (listing conversion as one of the causes of action that satisfies

the willful and malicious injury standard). The Restatement of Torts defines conversion as follows:

> (1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may be required to pay the other the full value of the chattel. (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important…(b) the actor's intent to assert a right in fact inconsistent with the other's right of control.

Restatement (Second) of Torts § 222A. "Intent" is satisfied under the Restatement when the actor "desires the consequences of his act, or [] believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A; *see also Litzinger v. Est. of Litzinger (In re Litzinger)*, 340 B.R. 897, 904 (B.A.P. 8th Cir. 2006). This standard aligns with the requirements for intent in nondischargeability actions based on willful and malicious injury espoused by the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998).

Because judgment was entered on the intentional tort of conversion in the Michigan Lawsuit and the facts supporting that judgment are entitled to preclusion in this Court, the judgment debt is non-dischargeable.

## CONCLUSION

The Court finds that the Consent Judgment entered in the Michigan Lawsuit is entitled to preclusive effect, and, as a result, that no genuine issues of material fact exist as to whether Franklin's debt is dischargeable. For the reasons set forth above, the Motion is GRANTED, and the debt owed by Franklin to Cosmographic under the Consent Judgment is NONDISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(6). A final judgment will enter as a separate document.

Done this 24th day of February, 2025.

                                                   Christopher L. Hawkins
                                                   United States Bankruptcy Judge

c:       William Wesley Causby, Attorney for Plaintiff
         J. Kaz Espy, Attorney for Defendant